ORIGINAL

Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number
Garry Harre (SBN 86398)
1940 W. Orangewood Ave, Ste 110
Orange, CA 92868
Tel: (714) 634-3842
Email: ghcmecf@gmail.com

☐ *Individual appearing without counsel*
☒ *Attorney for:* Ta Kim To

FOR COURT USE ONLY

FILED
NOV - 1 2010
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

In re:

TA KIM TO

Debtor(s).

CHAPTER: 13

CASE NO.: 8:10-bk-22705-TA

DATE: 11/16/10
TIME: 10:00 AM
CTRM: 5B
FLOOR: Fifth Floor

# RESPONSE TO MOTION FOR ORDER TO TERMINATE, ANNUL, MODIFY, OR CONDITION THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 AND DECLARATION(S) IN SUPPORT

**(MOVANT:** US Bank National Association **)**

**(RESPONDENT: ☒ Debtor ☐ Trustee ☐ Other: __________________________)**

***GENERAL NOTE****: A request for additional time is* ***not*** *usually an adequate response in opposition to the Motion. This Response and supporting declaration(s) and other admissible evidence must be filed with the Court and served pursuant to the Local Bankruptcy Rules.*

1. ☐ **NON-OPPOSITION:** Notice is hereby given that the Respondent does not oppose the granting of the Motion.

***NOTE****: If you do not oppose the Motion, there is no need to appear at the hearing scheduled in the Motion.*

2. ☐ **LIMITED OPPOSITION -- APPEARANCE REQUIRED:** Respondent opposes the Motion only to the extent that it seeks immediate relief from stay. Respondent requests that no lock out, foreclosure, or repossession shall take place before *(specify date)*:

The reason for this request is *(specify)*:

*(Continued on next page)*

This form is OPTIONAL. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009* **F 4001-1M.RES**

Main Document Page 2 of 43

Response to Motion for Relief from Stay - *Page 4 of* ____ **F 4001-1M.RES**

| In re TA KIM TO (SHORT TITLE) Debtor(s). | CHAPTER: 13 |
|---|---|
| | CASE NO.: 8:10-bk-22705-TA |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
1940 W. Orangewood Ave., Ste 110
Orange, CA 92868

A true and correct copy of the foregoing document described as Response to Motion for Order to Terminate, Annul, Modify, or Condition the Automatic Stay and Declaration(s) in Support. will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 10/25/10 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

U.S. Trustee: ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On 11/1/10 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

1. Hon. Judge: Theodor Albert/Intake, U.S. Bankruptcy Court, 411 W. Fourth St., Santa Ana, CA 92701-4593.
2. Movant Attorney: Gerald S. Kim, 20955 Pathfinder Rd, Ste 300, Diamond Bar, CA 91765.
3. Trustee: Amrane Cohen (TR), 770 The City Drive South, Ste 3300, Orange, CA 92868.

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ____________ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 11/1/10 | Judy Pham | [signature] |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is OPTIONAL. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009* **F 4001-1M.RES**

GARY HARRE, ESQ. (BAR NO. 86398)
LAW OFFICES OF GARY HARRE & ASSOCIATES
1940 W. ORANGEWOOD AVE., STE 110
ORANGE, CA 92868
TELEPHONE: (714) 200-4701
EMAIL: GHCMECF@GMAIL.COM

ATTORNEY FOR DEBTOR TA KIM TO

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE.<br><br>TA KIM TO | **Case No. 8:10-BK-22705-TA**<br><br>**MEMORANDUM IN SUPPORT OF OPPOSITION TO US BANK NATIONAL ASSOCIATION MOTION FOR RELIEF FROM THE AUTOMATIC STAY.**<br><br>**DATE: 11/16/2010**<br>**TIME: 10:00 AM**<br>**DEPT: 5B**<br>**HON.: THEODOR ALBERT**<br><br>411 West Fourth Street<br>Santa Ana, CA 92701-4593 |

Debtor TA KIM TO, by and through their counsel, submit this Memorandum in Support of their opposition to US Bank National Association, as Successor Trustee to Bank of America, National Association, (Successor by Merger to LaSalle Bank National Association) as Trustee for Morgan Stanley Loan Trust 2007-8XS ("US Bank" or "Movant") motion for relief from the automatic stay or for order confirming that the automatic stay does not apply under 11 U.S.C. §362(l).

**SUMMARY**

US Bank claims that it is the legal owner of the Property known as 10231 Kenmore Street, Anaheim, CA 92804 via purported Trustee's Deed attached to Movant's motion as Exhibit 1. The Trustee's Deed stated that NDEx West, LLC as the duly appointed Trustee under the deed of trust

dated 11/24/2006 and recorded as instrument number 2006000815835 grant and convey to US BANK, a foreclosing beneficiary. US Bank did not pay for such purchase, rather, it acquired the Trustee's Deed by **credit bid** as purported beneficiary under the deed of trust (hereinafter referred to as "DOT"). Such Trustee's Deed was recorded with a notation, which stated "*This is an accommodation recording only. It has not been abstracted as to its content or the effect it may present upon recording. North American Title Co.*" Furthermore, only copy of the Trustee's Deed was recorded by Orange County recorder office without authentication as to its accuracy. *See* Movant's Exhibit 1.

As foreclosing beneficiary under the DOT as represented in Trustee's Deed, there is no evidence such as original Note with endorsement, or even DOT showing that US Bank was the beneficiary entitled to enforce the mortgage.

On or about 04/06/2009, North American Title Company recorded a Notice of Default and Election to Sell Under Deed of Trust (hereinafter referred to as "NOD") with Orange County Recorder, instrument number 2009000162918. A true and correct copy of which is attached herewith as **Exhibit A**. The NOD as executed by Ric Juarez from NDEx West, LLC as Agent for Beneficiary. Such NOD stated that **Mortgage Electronic Registration Systems, Inc. (MERS)** was the beneficiary under the Deed of Trust recorded on 12/06/2006 as Instrument No. 2006000815835. A true and correct copy of which is attached herewith as **Exhibit B**. Such DOT stated that MERS "*is a separate corporation that is acting solely as a nominee*" for Reunion Mortgage Inc., a lender organized and existing under the laws of California. Essentially, established records clearly indicated that US Bank is not the beneficiary as stated in the Trustee's Deed.

Attached to Movant's Motion was declarations under penalty of perjury of Edward A. Treder ("Treder"), who represented to the Court that he "*is the attorney responsible for handling a post-foreclosure eviction proceeding for movant.*" This is clearly false representation. Attached to Movant's motion is Exhibit 3, which prepared and signed by Dana J. Seyler, attorney for Movant; NOT Edward A. Trader.

At all time mentioned herein, Debtor never made any payment to MERS or US Bank and these entities never demand payment form Debtor. This is the first time Debtor learned of US Bank or MERS as the beneficiary under the deed of trust.

Upon information and belief, and a search of appropriate SEC filings, Reunion Mortgage Inc. ("REUNION") did not fund mortgage loans it originates, but operates under a Flow Servicing Agreement or other similar agreement with another entity or entities that provide the actual funds used to fund mortgages originated by REUNION. Because REUNION used someone else's funds, it charged, inter alia, a yield spread premium (YSP) that makes loans more costly to consumers and that violates federal consumer protection laws when undisclosed.

On October 25, 2010, Debtor initiated an Adversary Proceeding against US Bank and NDEx West LLC, Case No. 8:10-ap-01502. A true and correct copy of which is attached herewith is attached as **Exhibit C**. Causes of action includes Quiet Title, Fraud and Cancel of Trustee's Deed. Debtor alleged that NDEx West was not a trustee under the DOT and fraudulently conveyed title to US Bank as foreclosing beneficiary under credit bid. Allegations in the adversary complaint is therefore incorporated herein as if alleged in this opposition.

## BACKGROUND

Today, more and more homeowners turn to the bankruptcy system for protection when facing financial hardship and impending foreclosure. It is bankruptcy courts' responsibility to ensure that these debtors receive the full protection of the Bankruptcy Code, including the benefit of the automatic stay, for as long as the debtors are entitled to it. Unfortunately, contemporaneously with the increase in foreclosures, there is an increase in lenders and entities posing as lenders who, in their rush to foreclose, haphazardly fail to comply even with the most basic legal requirements of the bankruptcy system. It is the movant's responsibility to comply, and this Court's responsibility to ensure compliance, with both substantive and procedural requirements of the Bankruptcy Code, the federal rules, and other applicable law. *See*, e.g., In re Maisel, 378 B.R. 19 (Bankr. Mass. 2007); In re Foreclosure Cases, 2007 WL 3232430 (N.D. Ohio 2007); In re Foreclosure Cases, 521 F. Supp. 2d 650 (S.D. Ohio 2007).

The most basic elements required to obtain relief from stay are that a movant (1) have the right to enforce the subject debt (2) in a way it is attempting to do so (through foreclosure), i.e., that the movant have standing to bring and prosecute a lift-stay motion. *Id.* In this case, US Bank satisfies neither of these elements. US Bank does not have the right to enforce the subject debt in the first place, much less to enforce it as a purported owner by way of Trustee's Deed through credit bid. Here, Movant's motion contained no declaration by anyone from US Bank asserting that it was the beneficiary of a promissory note and deed of trust by way of assignment to enable it to take title of Debtor's property by way of credit bid.

**US BANK HAS NO STANDING TO BRING STAY-RELIEF BECAUSE IT WAS NEVER A BENEFICIARY OF THE PROMISSORY NOTE AND DEED OF TRUST**

Stay-relief requests are governed by Fed. R. Bankr. P. 4001(a)(1), to which Fed. R. Bankr. P. 9014 is applicable. Rule 9014, in turn, incorporates Rule 7017, which makes Fed. R. Bankr. P. 17 applicable ("[a]n action must be prosecuted in the name of the real party in interest.";) The standing doctrine "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Kowalski v. Tesmer, 543 U.S. 125, 128-29, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004) (quoting Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct 2197, 45 L.Ed.2d 343 (1975)). Constitutional standing under Article III requires, at a minimum, that a party must have suffered some actual or threatened injury as a result of the defendant's conduct, that the injury be traced to the challenged action, and that it is likely to be redressed by a favorable decision. (Valley Forge Christian Coll. v. Am. United for Separation of Church and State, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (citations and internal quotations omitted)). Beyond the Article III requirements of injury in fact, causation, and redressibility, the creditor must also have prudential standing, which is a judicially-created set of principles that places limits on the class of persons who may invoke the courts' powers. (Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct 2197, 45 L.Ed.2d 343 (1975)). As a prudential matter, a plaintiff must assert "his own legal interests as the real party in interest". (Dunmore v. United States, 358 F.3d 1107, 1112 (9th Cir.2004), as found in Fed.R.Civ.P. 17, which provides "[a]n action must be prosecuted in the name of real party in interest.")

Transfer of mortgage paper may be made outright (sale) or by pledge (as security for a loan to the transferor.). In either event, to perfect the transfer, the transferor should physically deliver the note to the transferee. Without a physical transfer, a sale of the note could be invalided as a fraudulent conveyance (under California Civil Code § 3440), and a transfer in pledge could be invalidated as an unperfected (under Com.Code §§ 9313-9314). (California Mortgages and Deed of Trust, and Foreclosure Litigation, by Roger Bernhardt, Fourth Edition, section 1.26). One without a pecuniary interest in the Mortgage Loan is not an obligee under the debt and, thus, has no legal standing to foreclose ***ab initio***. (Watkins v. Bryant (1891) 91 C 492, 27 P 77).

In support of the motion, US Bank has provided a copy of a Trustee's Deed, which stated that it was the grantee who was the foreclosing beneficiary under the deed of trust. Movant has NOT provided any evidence that it was the beneficiary of the original Note and Deed of Trust. As included in respondent's Exhibit, the Note and Deed of Trust run in favor of Reunion Mortgage Inc. Though it is undisputed that REUNION held a security interest in the Property by virtue of the Deed of Trust, US Bank has provided NO evidence al all that any interest in the Deed of Trust was ever assigned from REUNION to US Bank, or to anyone else for that matter.

US Bank has provided no authority (and Debtor is aware of none) for the apparent proposition that transfer of the Deed of Trust without assignment, let alone recordation, is sufficient to give US Bank or Morgan Stanley Loan Trust 2007-8XS a security interest in the Property as beneficiary. As it stands on the record before the Court, the Trustee's Deed with US Bank as beneficiary foreclosing on the Deed of Trust by way of Credit Bid constitute fraudulent transfer. Nothing in the Deed of Trust as written or in the way in which it has been handled gives any indication that US Bank or Morgan Stanley Loan Trust 2007-8XS has any security interest as beneficiary in the Property. Not surprisingly therefor, US Bank focuses the Court's attention on the Trustee's Deed.

The sole evidence that US Bank provides which would indicate to the Court that US Bank might have any interest at all in the Property, is the declaration of Edward A Trader, the attorney responsible for handling a post-foreclosure eviction proceeding for movant. Evenso, as stand on the records, Mr. Trader's declarations are false. Assuming for the sake of argument that the Note

and Deed of Trust were "transfer" to US Bank before it initiated foreclosure and subsequently made credit bid to purchase the Property; such "transfer" did not amount to an "assignment," which is sufficient under California to give US Bank a security interest in the Property.

California Civil Code § 2932.5 provides:

Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded.

Although Debtor is aware of no California case law interpreting this section. However, it appears to indicate that a security interest runs with the obligation - in terms of the case at hand, that is as assignment of the Note amounts to an assignment of the Deed of Trust. However, as indicated, US Bank has provided no evidence that the Note was ever assigned to US Bank. Furthermore, MERS was not named anywhere in the promissory note and could not conceivably assigned the Note to US Bank. Furthermore, even if the Note was assigned to US bank, US Bank is not the party asserting a security interest in the Property. Rather, the motion is brought by US bank as Trustee for or Morgan Stanley Loan Trust 2007-8XS. The record is devoid of any further assignment to or Morgan Stanley Loan Trust 2007-8XS.

In summary, the only question before this Court is whether US Bank as trustee for or Morgan Stanley Loan Trust 2007-8XS has an interest in the Property acquired by way of credit bid as beneficiary of the Note executed by Debtor.

**CONCLUSION**

For the reasons set forth above, US Bank as trustee for or Morgan Stanley Loan Trust 2007-8XS' motion for relief from stay should be denied.

//

//

//

//

DATED this 1st day of November, 2010.

Respectfully Submitted;

Gary Harre, Esq.

**DECLARATION OF DEBTOR IN SUPPORT OF OPPOSITION TO MOTION FOR RELIEF FROMS STAY.**

I, TA KIM TO, declare:

1. I am the debtor in case number 8:10-BK-22705-TA. If called upon to testify as to the matter set forth in this declaration, I could and would competently testify thereto based upon my personal knowledge.

2. This declaration is in support of my opposition to the pending motion for relief from the automatic stay filed by movant, US Bank, as Trustee for Morgan Stanley Loan Trust 2007, 8XS.

3. I refinanced my home on or about November 24, 2006 with Reunion Mortgage Inc. At no time mentioned herein, I ever made any payment to a company known as MERS or Morgan Stanley Loan Trust 2007, 8XS.

4. On or about I reached loan modification agreement with an entity known as "America's Servicing Company". Pursuant to such agreement, I made payments exceed the monthly mortgage payment to cure the default.

5. On or about September 5, 2010, I received an Unlawful Detainer summons from US Bank as Trustee for Morgan Stanley Loan Trust 2007, 8XS purportedly purchased my property at trustee sale by way of credit bid.

10. At no time mentioned herein, I received any notice from NDEx West LLC or anyone informing me of the trustee sale of my property.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on October 31, 2010, at Orange, California.**

**Ta Kim To**

Recording requested by:
**NORTH AMERICAN TITLE COMPANY - California**

When Recorded Mail To:
**NDEx West, L.L.C.**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**

DFF20090134003827

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder
12.00
2009000162918 08:00am 04/06/09
105 49 N15 3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

Space above this line for Recorder's use only

Trustee Sale No. : **20090134003827** Title Order No.: **914735**

**IMPORTANT NOTICE**

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is **$14,642.42** as of **4/2/2009** and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

**IMPORTANT NOTICE**

**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

Trustee Sale No. : **20090134003827** Title Order No.: **914735**

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**AMERICA'S SERVICING COMPANY**
**c/o NDEx West, LLC**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**
**(866) 795-1852**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

**NOTICE IS HEREBY GIVEN THAT:** **NDEx West, LLC** is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated **11/24/2006**, executed by **KIM TO TA**, as Trustor, to secure obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)**, as Beneficiary **Recorded on 12/06/2006 as Instrument No. 2006000815835** of official records in the Office of the Recorder of **ORANGE** County, **California**, as more fully described on said Deed of Trust. Including a Note(s)/ Unconditional Guaranty which had a principal amount of **$504,000.00** that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON **12/1/2008** AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.

**NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATED: **4/2/2009**

**NDEx West, LLC as Agent for Beneficiary**

By: ______________________

**Ric Juarez**

FCUS_NoticeOfDefault.rpt(09/05/2008)Ver-24

**EXHIBIT A**

Recording Requested By /
Return To:
REUNION MORTGAGE INC.
860 HILLVIEW COURT, SUITE 300
MILPITAS, CA 95035
(408) 941-8366
ATTN: POST CLOSING

Prepared By:
YUET HANSEN
REUNION MORTGAGE INC. - SANTA ANA
400 NORTH TUSTIN AVENUE, SUITE 350
SANTA ANA, CA 92705
(714) 708-6800

[Space Above This Line For Recording Data]

# DEED OF TRUST

TA
Loan #: 200502408
PIN: 126-345-12
MIN: 100068300111601747

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated NOVEMBER 24, 2006, together with all Riders to this document.
(B) **"Borrower"** is KIM TO TA, A MARRIED WOMAN, AS HER SOLE AND SEPARATE PROPERTY. Borrower is the trustor under this Security Instrument.
(C) **"Lender"** is REUNION MORTGAGE INC.. Lender is a CORPORATION organized and existing under the laws of CALIFORNIA. Lender's address is 400 NORTH TUSTIN AVENUE, SUITE 350, SANTA ANA, CA 92705.
(D) **"Trustee"** is TICOR TITLE COMPANY.
(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) **"Note"** means the promissory note signed by Borrower and dated NOVEMBER 24, 2006. The Note states that Borrower owes Lender FIVE HUNDRED FOUR THOUSAND AND 00/100 Dollars (U.S. $504,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than DECEMBER 1, 2036.
(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☒ Other(s) [specify] PREPAYMENT PENALTY RIDER | |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are

imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.
As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of ORANGE:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.
which currently has the address of 10231 KENMORE STREET ANAHEIM, California 92804 ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial

payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA,

Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially

equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in

the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic

or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the

Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

______________________________

- BORROWER - KIM TO TA - DATE -

State of )
)
County of )

On ______________ before me, ______________________________,
(here insert name and title of the officer)

personally appeared ______________________________
______________________________
______________________________,

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature ______________________________ (Seal)

# NOTE

TA
Loan #: 200502408
MIN: 100068300111601747

| NOVEMBER 24, 2006 | TUSTIN | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

10231 KENMORE STREET, ANAHEIM, CA 92804
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $504,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is REUNION MORTGAGE INC.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.500%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on JANUARY 1, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on DECEMBER 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 894163, LOS ANGELES, CA 90189-4163 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $3,185.62.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days

after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may

200502408

invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**CAUTION -- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

________________________________________
- BORROWER - KIM TO TA - DATE -

*[Sign Original Only]*

# PREPAYMENT NOTE ADDENDUM
## (Multi-State)

TA
Loan #: 200502408
MIN: 100068300111601747

This Prepayment Note Addendum is made this 24TH day of NOVEMBER, 2006 and is incorporated into and shall be deemed to amend and supplement the Note of the same date (the "Note") made by the undersigned (the "Borrower") to evidence indebtedness to REUNION MORTGAGE INC. (the "Lender"), which debt is secured by a Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date and covering the property described in the Security Instrument and located at 10231 KENMORE STREET, ANAHEIM, CA 92804 (the "Property").

**Additional Covenants.** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender covenant and agree that the provisions of the section of the Note entitled "BORROWER'S RIGHT TO PREPAY" are amended to read as follows:

Subject to the Prepayment penalty provided below, I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." A "Full Prepayment" is the Prepayment of the entire unpaid Principal due under the Note. A payment of only part of the unpaid Principal is known as a "Partial Prepayment."

**If, within the 6-month period beginning with the date Borrower executes the Note (the "Penalty Period"), Borrower makes a full prepayment, or partial prepayment in any twelve (12)-month period that exceeds 20% of the original principal loan amount, Borrower will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment. The prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment, unless otherwise prohibited by applicable law or regulation. No prepayment charge will be assessed for any prepayment occurring after the Penalty Period.**

Notwithstanding the foregoing, in the event of a Full Prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first 0.50 year(s) of the term of the Note, no Prepayment penalty will be assessed. In that event, I agree to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

The Note Holder will apply all Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a Partial Prepayment, there will be no change in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If my Note is an Adjustable Rate Note, Partial Prepayments may reduce the amount of my monthly payment after the first interest rate Change Date following the Partial Prepayment. However, any reduction due to my Partial Prepayment may be offset by an interest rate increase.

The Note Holder's failure to collect a Prepayment penalty at the time a Prepayment is received shall not be deemed a waiver of such penalty. Any Prepayment penalty not collected at the time the Prepayment is received shall be payable on demand.

All other provisions of the Note are unchanged and remain in full force and effect.

200502408

**NOTICE TO BORROWER**

**Do not sign this Addendum before you read it. This Addendum provides for the payment of a Prepayment penalty if you wish to repay the loan prior to the date provided for repayment in the Note.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED:

________________________________________

\- BORROWER - KIM TO TA - DATE -

GARY HARRE, ESQ. (BAR NO. 86398)
Law Offices of Gary Harre & Associates
1940 W. Orangewood Ave., Ste 110
Orange, CA 92868
Telephone: (714) 634-3842
Email: ghcmecf@gmail.com

Attorney for Debtor
TA KIM TO

FILED
OCT 25 2010
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>TA KIM TO | **Case No. 8:10-bk-22705-TA** |
| TA KIM TO, an Individual<br>Plaintiff,<br><br>-vs.-<br><br>U.S. BANK NATIONAL ASSOCIATION, AS SUCCESSOR TRUSTEE TO BANK OF AMERICA, NATIONAL ASSOCIATION, 9SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION) AS TRUSTEE FOR MORGAN STANLEY TRUST 2007-8XS; NDEx WEST, LLC; and all persons claiming by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title thereto; and DOES 1-100, Inclusive;<br><br>Defendant. | **ADVERSARY PROCEEDING**<br><br>**ADV. NO. ____________**<br><br>**COMPLAINT TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM, TILA VIOLATION ,QUIET TITLE, CANCEL TRUSTEE DEED, AND FOR DAMAGES.** |

COMES NOW debtors and plaintiff TA KIM TO herein, ("Plaintiff" or "TA"), and respectfully alleges the following:

//

Case 8:10-bk-22705-TA Doc 23 Filed 10/25/10 Entered 10/25/10 13:13:57 Desc Main Document Page 2 of 16

GARY HARRE, ESQ.
1940 W. ORANGEWOOD AVE., STE 110
ORANGE, CA 92868

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

1. This adversary proceeding is brought pursuant to 11 U.S.C. §506 and Federal Rule of Bankruptcy Procedure 7001.

2. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§151, 157 and 1334(b). Venue is proper pursuant to 28 U.S.C. §1409.

3. This adversary proceeding is a core proceeding as defined at 28 U.S.C. §157(b)(2)(b) and (b)(2)(K) in that it is an action to determine the nature, extent and validity of a lien on property evidenced by a deed of trust, and the allowance or disallowance of a claim. To the extent this proceeding is determined to be a non-core proceeding, Plaintiff consents to the entry of final orders or judgment by the bankruptcy court.

4. Plaintiff are individuals, and debtors of the within captioned bankruptcy case, having filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on September 9, 2010 ("the Bankruptcy Case"). The case is pending for conversion to Chapter 13 of the Bankruptcy Code.

5. Plaintiff is and at all times mentioned herein is the owner of real property located 10231 Kenmore Street, Anaheim, California (hereinafter referred to as "SUBJECT PROPERTY" and more particularly described as:

> **LOT 70 OF TRACT NO. 3104, IN THE CITY OF STANTON, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 92, PAGE(S) 46 AND 47, OF MISCELLENEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. PARCEL NUMBER: 126-345-12.**

6. Plaintiff TA refinanced the subject property as part of the marriage dissolution in November 2006. In order to complete the refinancing, TA borrowed $504,000.00 from Reunion Mortgage Inc. ("Reunion"). Pursuant to paragraph 3 in the deed of trust, TA was required to make her payment directly to Reunion and Reunion was required to account for the payments made. This made Reunion the initial servicer of the loan as that term is defined in RESPA at 12 U.S.C. § 2605(i)(3).

7. Plaintiff is informed and believes that defendant NDEX WEST, LLC (hereinafter referred to as "NDEX") is at all times a corporation conducting business in the State of California.

Case 8:10-bk-22705-TA Doc 23 Filed 10/25/10 Entered 10/25/10 13:13:57 Desc Main Document Page 3 of 16

8. Plaintiff is informed and believes that defendant U.S. BANK NATIONAL ASSOCIATION, AS SUCCESSOR TRUSTEE TO BANK OF AMERICA, NATIONAL ASSOCIATION, 9SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION) AS TRUSTEE FOR MORGAN STANLEY TRUST 2007-8XS ("US BANK") is a trust corporation, doing business in the State of California, and a purported creditor of Plaintiff.

9. The Defendants herein named as "all persons claiming by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title thereto" (hereinafter referred to as "the unknown defendants") are unknown to Plaintiff. These unknown Defendants, and each of them, claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to Plaintiff title; and their claims, and each of them, constitute a cloud on Plaintiff's title to that property.

10. Plaintiff are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 150, and therefore sue these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff are informed and believe and thereon allege that each of these fictitiously named defendants claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to Plaintiff title and their claims, and each of them, constitute a cloud on Plaintiff title to that property.

11. At all times relevant, NDEx lacked authority to record the Notice of Default, Notice of Sale, or to conduct the trustee sale or record a Trustee Deed.

12. U.S. BANK NATIONAL ASSOCIATION, AS SUCCESSOR TRUSTEE TO BANK OF AMERICA, NATIONAL ASSOCIATION, 9SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION) AS TRUSTEE FOR MORGAN STANLEY TRUST 2007-8XS, was permitted to make a credit bid at the Trustee Sale conducted by NDEx. However, US Bank, never owned either the note and was not the Lender.

13. Plaintiff is informed and believe and on such information and belief allege that the deed of trust was assigned by MERS to US Bank. However, at the time of this alleged assignment, MERS

GARY HARRE, ESQ.
1940 W. ORANGEWOOD AVE, STE 110
ORANGE, CA 92868

GARY HARRE, ESQ.
1940 W. ORANGEWOOD AVE, STE 110
ORANGE, CA 92868

was not authorized to do business in California. The act of buying, selling, transferring and assigning deed of trust on California property is a business. Such assignment are void or ultra vires if made by a company, like MERS, who was unable to do business in California. A copy of a Certificate of Status confirming this suspension is attached to this Complaint as Exhibit A.

14. Also, under the governing California laws, the deed of trust are security for performance of obligations specified. Said deed of trust cannot be transferred or assigned independently of the underlying obligations. Plaintiff has never been advised of any transfer or assignment of the actual loan. The transfer of deed of trust without the note accompanying it is an improper transfer that conveys no meaningful rights. Thus, US Bank became the owner of the property as a result of the Trustee Deed wrongfully executed by NDEx.

15. The mortgage loan assigned by MERS as nominee, is at most, an unsecured debt. The only parties entitled to collect on the unsecured debt would be the holders in due course and beneficial owners of the original Promissory Note.

16. Defendant US Bank, represented itself as a "Trust" coming to Court are actually Mortgage Back Securities ("MBS"). The MBS have signed themselves up under oath with the Security Exchange Commission ("SEC"), and the Internal Revenue Service ("IRS"), as mortgage asset "pass-through" entities wherein they can never own the mortgage loan assets in the MBS. This allows them to qualify as a Real Estate Mortgage Investment Conduit ("REMIC") rather than an ordinary Real Estate Investment Trust ("REIT"). As long as MBS is a qualified REMIC, no income tax will be charged to the MBS.

17. Importantly, US Bank as "Trustee" or custodian, must have the mortgages recorded in the investors name as the beneficiaries of the MBS in the year MBS "Closed". Every mortgage in the MBS should have been publicly recorded in Orange County where the property is located with a mortgage in the name of "Morgan Stanley Loan Trust 2007-8XS" Such mortgage would have had been publicly recorded in the year 2007.

18. The "Trusts" were never registered as Trusts. The promissory note was never obtained and the mortgages never obtained or recorded.

Case 8:10-bk-22705-TA Doc 23 Filed 10/25/10 Entered 10/25/10 13:18:57 Desc Main Document Page 5 of 16

19. In this scenario, even if the foreclosing entity purportedly having credit bid produces a copy of a note, or even an alleged original, the mortgage loan was not conveyed into the trust under the requirements of the prospectus for the trust or the REMIC requirements of the IRS.

20. Consequentially, the end result would be that the required MBS asset, or any part thereof (mortgage note or security interest), would not have been legally transferred to the trust to allow the trust to ever even be considered a "holder" of a mortgage loan. Neither the "Trust" or the Servicer, would ever be entitled to bring a foreclosure or declaratory action. The Trust will never have standing or be a real party in interest.

21. The transfer of mortgage loans into the Trust in which US Bank is the Trustee after the "cut off date" (in this case 2007), destroys the trust's REMIC tax exempt status, and this trust would owe millions of dollars to the IRS and the State of California as the income would be taxed at of one hundred percent (100%).

22. Subsequent to the "cut off date" listed in the prospectus, whereby the mortgage notes and security for these notes had to be identified, and the Note and Mortgages transferred, and thereafter, the pool is permanently closed to future transfers of mortgage assets.

23. Pursuant to SEC filing, the "cut-off" date for this trust was May 1, 2007 and "closing date" was May 31, 2007.

24. Therefore, the lack of acquisition of Plaintiff mortgage loan violates the prospectus presented to the investors and the IRS REMIC requirements.

25. Plaintiff signed a Promissory Note and Mortgage, they were unknowingly converting their property into an asset of a MBS. Plaintiff were never informed of the nature of the scheme. They were deliberately induced into signing a Negotiable Instrument which was never intended as such, but as intended as collateral for a MBS.

26. The fact that this loan was meant to fund a MBS was a "Material disclosure" which was deliberately and intentionally undisclosed. The failure to disclose the identity of the true lender at closing was also a "material disclosure"; the nature of which would make the contract voidable under California contract law.

GARY HARRE, ESQ.
1940 W. ORANGEWOOD AVE, STE 110
ORANGE, CA 92868

Case 8:10-bk-22705-TA Doc 23 Filed 10/25/10 Entered 10/25/10 13:13:57 Desc Main Document Page 8 of 16

27. As required by SEC, this MBS/Trust has a Pooling and Servicing Agreement ("PSA") must be publicly filed. The only purpose for the PSA is for the administration and distribution of funds to the investors and the obligation of the so called Trustee in administering the MBS. The investors who put up money for the MBS and who received the MBS certificates or Bonds, are not parties to the PSA.

28. The PSA merely sets forth what happens after the mortgage are bundled together. However, the PSA also sets forth a ***Cut Off Date***. The Cut off date is the date on which all mortgage loans in the MBS/Trust must be identified and set out in the SEC required list of mortgage loans.

29. Like the cut off date, this MBS/Trust had a ***Closing Date***. The Closing Date is the date that the individual identified mortgages were to be transferred through the Custodian for the benefit of the investors. The Trust Custodian must certify that for each mortgage loan, the Trust Custodian has possession of the original Promissory Note, all original endorsements and assignments transferring the Note and proof that the ownership of the Note has been transferred for the benefit of the investors. Further proof of the ownership of a mortgage loan is required by a public recording of the Mortgage or Assignment of the mortgage itself. This MUST have occurred by the closing date.

30. In this case, Plaintiff mortgage was never part of MBS scheme as US Bank represented to the Court because assignment of mortgage loan into the trust did not occur until after the MBS closing date.

31. US Bank, as MBS trustee claims to be acting on behalf of the MBS/Trust and claims that it has acquired the loan from MERS and fraudulent permitted to make credit bid. The multiple transfers of title of the mortgage loan between the originator and the MBS/Trust is simply ignored as it can never be proved or shown to the Court. Chain of Mortgage assignment is broken as US Bank was never the mortgagee of record under a Mortgage Assignment and has absolutely no legal tie to the investors in the MBS.

GARY HARRE, ESQ.
1940 W. ORANGEWOOD AVE, STE 110
ORANGE, CA 92868

Case 8:10-bk-22705-TA Doc 23 Filed 10/25/10 Entered 10/25/10 13:13:57 Desc Main Document Page 7 of 16

32. The assignment of Plaintiff's mortgage were signed and notarized many years after the actual date of the loan and the date listed with the SEC and IRS as the "Closing" of the REMIC. In this case if found to be true, this MBS/Trust has been operating illegally as a tax exempt REMIC.

33. Here, the Note and Mortgage were severed or bifurcated when the deed of trust was fraudulently assigned by MERS as nominee. MERS never loaned any money to the Plaintiff. MERS was never a beneficiary under the Note. MERS purportedly held the Mortgage as "nominee".

34. An assignment from MERS was a legal nullity. MERS never had a interest in this fraudulently conveyed mortgage and Note.

GARY HARRE, ESQ.
1940 W. ORANGEWOOD AVE, STE 110
ORANGE, CA 92868

**FIRST CLAIM FOR RELIEF**
**[Declaratory Relief to Determine an Interest in Property]**
**[F.R.B.P 7001(2) and 7001(9)]**

35. Plaintiff reallege and incorporate the allegations contained in paragraphs 1 through 34, inclusive, as though set forth at length herein.

36. Plaintiff allege that they hold an interest in the Property free and clear of any interest of defendant, in that the Trustee Deed which wrongfully signed by NDEx and recorded with the Orange County Recorder and that accordingly, the Trustee Deed is null and void.

37. Plaintiff is informed and believes that Defendant allege that the Trustee Deed cannot be determined to be null and void because it is was the beneficiary under the deed of trust and permitted to present credit bid.

38. Plaintiff is informed and believes and thereon alleges that Defendants dispute the contention alleged in paragraph 37.

39. An actual controversy exists between Plaintiff and Defendants with regard to the validity, nature and extent of their interests in the Property.

40. It is necessary that this Court declare the actual rights and obligations of the parties and make a determination as to the validity, nature and extent of Defendants' interest in the Property.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

Case 8:10-bk-22705-TA Doc 23 Filed 10/25/10 Entered 10/25/10 13:13:57 Desc Main Document Page 8 of 16

1. That the Court determine the nature and extent and validity of Defendants' interest in the real property located at 3394 Carmel Drive, Costa Mesa, California;
2. That the Court determine that the amount of the lien secured by the Reunion Deed of Trust is zero;
3. That the Court determine that the Trustee Deed claim owed by US Bank is null and void;
4. For attorney fees and costs of suit incurred herein; and,
5. For such other and further relief as the court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**[Declaratory Relief to Determine Status of US Bank Claim]**
**[11 U.S.C. § 506 and F.R.B.P 7001]**

41. Plaintiff re-allege and incorporate the allegations contained in paragraphs 1 through 40, inclusive, as though set forth at length herein.

42. Plaintiff alleges that the lien evidenced by the Reunion Deed of Trust has no value since it is wholly unsecured, that US Bank's claim through Trustee Deed is null and void.

43. Plaintiff is informed and believes that Defendant allege that the Trustee Deed cannot be determined to be null and void because it is was the beneficiary under the deed of trust and permitted to present credit bid.

44. Plaintiff is informed and believes and thereon alleges that US Bank disputes the contention alleged in paragraph 43.

45. An actual controversy exists between Plaintiff and US Bank with regard to the status of US Bank's claim through Trustee Deed.

46. It is necessary that this Court declare the actual rights and obligations of the parties and make a determination as to whether US Bank's claim in Trustee Deed null and void.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. That the Court determine the nature and extent and validity of Defendant's interest in the real property located at 3394 Carmel Drive, Costa Mesa, California;
6. That the Court determine that the amount of the lien secured by the Reunion Deed of Trust is zero;

Gary Harre, Esq. 1940 W. Orangewood Ave, Ste 110 Orange, CA 92868

Case 8:10-bk-22705-TA Doc 23 Filed 10/25/10 Entered 10/25/10 13:16:37 Desc Main Document Page 9 of 16

7. That the Court determine that the Trustee Deed claim owed by US Bank is null and void;

8. For attorney fees and costs of suit incurred herein; and,

9. For such other and further relief as the court deems just and proper.

**THIRD CLAIM FOR RELIEF**
**[As to Defendant US Bank]**
**[TILA Violation]**

47. Plaintiff re-allege and incorporate the allegations contained in paragraphs 1 through 46, inclusive, as though set forth at length herein.

48. In May 2009, "The Helping Families Save Their Homes Act of 2009" was enacted into law that calls for notice to the consumer when a "mortgage loan" is transferred or assigned. The provision was effective immediately and violations are subject to TILA liability.

49. 15 U.S.C. § 1641 was amended by adding at the end the following:

*"(g) NOTICE OF NEW CREDITOR.-*
*(1) IN GENERAL.- In addition to other disclosures required by this title, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including-*
*(A) the identity, address, telephone number of the new creditor;*
*(B) the date of transfer;*
*(C) how to reach an agent or party having authority to act on behalf of the new creditor;*
*(D) the location of the place where transfer of ownership of the debt is recorded; and*
*(E) any other relevant information regarding the new creditor.*

50. From the record, it appears that Deutsche Bank became the new owner or assignee on December 07, 2009.

51. To date, Plaintiff have not received any notice as required by 15 U.S.C. § 1641(g).

WHEREFORE, Plaintiff prays for judgment against Defendant Deutsche Bank as follows:

1. Statutory damage in the amount of $4,000.00;
2. For attorney fee and costs of suit incurred herein; and
3. For such other and further relief as the court deems just and proper.

//

//

GARY HARRE, ESQ.
1940 W. ORANGEWOOD AVE, STE 110
ORANGE, CA 92868

Case 8:10-bk-22705-TA Doc 23 Filed 10/25/10 Entered 10/25/10 13:13:57 Desc Main Document Page 10 of 16

GARY HARRE, ESQ.
1940 W. ORANGEWOOD AVE, STE 110
ORANGE, CA 92868

**FOURTH CLAIM FOR RELIEF**
**[As to Defendant US Bank]**
**[Cancellation of Trustee Deed]**

52. Plaintiff re-allege and incorporate the allegations contained in paragraphs 1 through 46, inclusive, as though set forth at length herein.

53. Attached as Exhibit B is a copy of the Trustee Deed which was wrongfully signed by NDEx, and recorded with Orange County Recorder. Said deed must be cancelled since it falsely notifies the world that Plaintiff no longer have an interest in the subject property.

54. The Trustee Deed is void since NDEx lacked the authority to conduct the non-judicial trustee sale and no court ever authorized NDEx to serve as trustee on any of the obligations encumbering the subject property.

55. Moreover. US Bank did not pay any money to NDEx as consideration for the Trustee Deed from NDEx. US Bank only paid NDEx its servicing fees for processing the non-judicial foreclosure process and preparing the void Trustee Deed. Thus, it would be inequitable to require Plaintiff to pay US Bank a substantial sum to buy back Plaintiff's own property. Plaintiff is able and willing to pay the actual owner of the underlying obligation(s) the fair market value of said property as determined by this Court.

**FIFTH CLAIM FOR RELIEF**
**[As to Defendant US Bank]**
**[Quiet Title]**

56. Plaintiff re-allege and incorporate the allegations contained in paragraphs 1 through 55, inclusive, as though set forth at length herein.

57. Plaintiff is the true owner of the subject property. She refinanced with Reunion Mortgage Inc. in 2006. Only Reunion Mortgage Inc. had the power to substitute trustees on the deed of trust recorded against the property.

58. On information and belief, Plaintiff allege that Reunion Mortgage Inc. never conveyed this right or any other interest in the note or deed of trust to US Bank. This information and belief derives from the fact that Plaintiff never received any notice of the change in the trustee, servicer of

Case 8:10-bk-22705-TA Doc 23 Filed 10/25/10 Entered 10/25/10 13:13:57 Desc Main Document Page 11 of 16

the obligation under Real Estate Settlement Procedure Act [RESPA 12 USC § 2600 et.seq.], or change in creditor under 15 U.S.C. § 1641.

59. The deed of trust provides that Reunion Mortgage Inc. will comply with all the obligations of RESPA. These obligations pre-empt and supersede any contrary provisions of California law which are less favorable to the borrowers related to the substitution of trustees on deed of trust. However, the loan were made in California. Thus, US Bank is also required to comply with provisions of California law that are more favorable to the borrowers than the provisions of RESPA.

60. Plaintiff is entitled to a decree of Quiet Title confirming her fee simple interest in the subject property as of the date on the deed prepared on 12/06/2006.

GARY HARRE, ESQ.
1940 W. ORANGEWOOD AVE, STE 110
ORANGE, CA 92868

**SIXTH CLAIM FOR RELIEF**
**[As to All Defendants]**
**[RESPA Violations]**

61. Plaintiff re-allege and incorporate the allegations contained in paragraphs 1 through 60, inclusive, as though set forth at length herein.

62. US Bank was named as assignee of the deed of trust without acquiring any interest in the underlying obligation. US Bank then used this position to change the servicer without notified of this transfer of the servicing rights. Said notification is required by RESPA at 12 USC 2605 and its subparts. Also the transfer was contrary to law since Reunion Mortgage Inc. owned the underlying notes and its servicing rights were never transferred. Essentially, US Bank illegally became the servicer and transferred at lease some of these servicing obligations to NDEx.

63. Upon becoming the sub-servicer, NDEx mailed Plaintiff a notice of default which materially exaggerated the alleged delinquency and default. Moreover, no accounting was ever provided to Plaintiff to identify the basis for US Bank's claims through sub-servicer of the balance due on the obligation.

64. Plaintiff have been harmed by said violations. In particular, she failed to receive proper credit for payments made, and were denied the right to reinstate the loan despite US Bank's fraudulent and deceiving act to obtain loan modification payment from Plaintiff. Ultimately,

Case 8:10-bk-22705-TA Doc 23 Filed 10/25/10 Entered 10/25/10 13:13:57 Desc Main Document Page 12 of 16

Plaintiff lost the property since she was unwilling to pay the excessive demand for reinstatement made by defendants.

**SEVENTH CLAIM FOR RELIEF**
**[As to NDEx]**
**[FDCPA]**

65. Plaintiff re-allege and incorporate the allegations contained in paragraphs 1 through 64, inclusive, as though set forth at length herein.

66. At all times relevant, NDEx was the debt collector as that term is used in FDCPA. In particular, it became the sub-servicer of the security instrument after a default occured. Moreover, NDEx was hired after this default for the specific purpose of collecting on the obligation. The principal business of NDEx is to collect debts which are secured by deed of trust on real estate in California.

67. 15 USC 1692(a) required NDEx to send Plaintiff a validation notice. This notice was required to identify the actual creditor [i.e. the actual owner of the obligation] and provide an accurate statement of the full amount due as of the date of the notice. NDEx breached this obligation and never provided the notice required by this provision of law.

68. NDEx also recorded a Notice of Default which sought collection of interest, charges, and expenses which were not explicitly authorized by both the underlying obligation and by California law. Seeking to collect such excessive amounts is a violation of 15 USC 1692f(1).

69. NDEx also engaged in false and misleading representations by asserting it was acting on behalf of the actual owners of the underlying note. Such false and misleading misrepresentations violate 15 USC 1692(e). On information and belief, Plaintiff alleges that neither NDEx or US Bank had ownership of the actual note between Plaintiff and Reunion Mortgage Inc.

70. Plaintiff was harmed and damaged by said FDCPA violations of defendants. These damages include the statutory damages provided in 15 USC 1692k(a) together with their actual damages, costs and attorney fees. The actual damages are the loss of title to her home since she was deprived of the ability to seek a workout with the actual owner of the underlying obligation.

GARY HARRE, ESQ.
1940 W. ORANGEWOOD AVE, STE 110
ORANGE, CA 92868

Case 8:10-bk-22705-TA Doc 23 Filed 10/25/10 Entered 10/25/10 13:13:57 Desc Main Document Page 13 of 16

Also, Plaintiff lost the ability to reinstate the loan without payment of unlawful fees, charges and costs.

**EIGHT CLAIM FOR RELIEF**
**[As to All Defendants]**
**[Wrongful Trustee Sale]**

71. Plaintiff re-allege and incorporate the allegations contained in paragraphs 1 through 70, inclusive, as though set forth at length herein.

72. NDEx wrongfully permitted US Bank to make a credit bid at the trustee sale, despite the fact that this bidder was not the owner of the note or deed of trust which formed the basis for the trustee sale. NDEx refused to afford any other bidder this privilege of making credit bids. Thus, US Bank acquired the valuable property of Plaintiff essentially for free.

73. US Bank and NDEx breached its obligations to conduct a fair trustee sale. Moreover, on information and belief, Plaintiff alleges that NDEx conspired with US Bank to deprive Plaintiff of her property without just cause and contrary to law.

74. Said wrongful conduct caused substantial harm to Plaintiff as summarized above.

**PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff pray for judgment as follows:

1. For an order canceling the Trustee Deed which purportedly conveyed the subject property to Defendant;
2. For an order confirming Plaintiff as the true fee simple absolute owner of the subject property;
3. For statutory damages for all FDCPA and RESPA violations.
4. For general damages for all FDCPA and RESPA violations;
10. For reasonable attorney fees and costs of suit incurred herein as provided by FDCPA and RESPA; and,
11. For such other and further relief as the court deems just and proper.

//

GARY HARRE, ESQ. 1940 W. ORANGEWOOD AVE, STE 110 ORANGE, CA 92868

Case 8:10-bk-22705-TA Doc 23 Filed 10/25/10 Entered 10/25/10 13:13:57 Desc
Main Document Page 14 of 16

DATED: 10/24/2010

Respectfully Submitted;

Gary Harre
Attorney for Debtors

I verify that the foregoing Adversary Complaint has been reviewed by me; and that the allegations therein are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Orange, California on October 24, 2010.

Ta Kim To

GARY HARRE, ESQ.
1940 W. ORANGEWOOD AVE, STE 110
ORANGE, CA 92868

Case 8:10-bk-22705-TA Doc 23 Filed 10/25/10 Entered 10/25/10 13:13:57 Desc Main Document Page 15 of 16

FORM B104 (08/07) 2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS** Ta Kim To | **DEFENDANTS** U.S. BANK NATIONAL ASSOCIATION et.al. |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) Gary Harre [714-200-4701] 1940 W. Orangewood Ave, Ste 110 Orange, CA 92868 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only) ☑ Debtor ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor ☐ Other ☐ Trustee | **PARTY** (Check One Box Only) ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin ☑ Creditor ☐ Other ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
COMPLAINT TO DETERMINE THENATURE, EXTENT AND VALIDITYOF LIEN AND TO DISALLOWSECURED CLAIM, TILA VIOLATION, FRAUD, LIBEL, QUIET TILE, AND INJUNCTIVE RELIEF.

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☒ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☒ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

RECEIVED
OCT 25 2010
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☑ Check if a jury trial is demanded in complaint | Demand $ 1,000,000.00 |

Other Relief Sought

Case 8:10-bk-22705-TA Doc 23 Filed 10/25/10 Entered 10/25/10 13:13:57 Desc Main Document Page 16 of 16

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Thuan X. Nguyen et.al. | | BANKRUPTCY CASE NO.<br>8:10-bk-22705-T |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISIONAL OFFICE<br>Santa Ana | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>10/24/10 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Gary Harre | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.